UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3: 04-CV-1095-B |
| CARRY TRANSIT, INC., as trade name for SUPERIOR CARRIERS, INC., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Union Pacific Railroad Company's Motion for Reconsideration (doc. 56) of this Court's October 27, 2005 Memorandum Order (the "Memorandum Order") granting summary judgment in favor of Defendant Carry Transit, Inc. For the reasons explained below, the Court DENIES the motion.

### I. Factual and Procedural Background

The central facts of this case were set forth in the Memorandum Order and need not be repeated here in full. Suffice it to say that this lawsuit arises out of the fact that certain of Carry Transit's customers – shippers of food grade products transported to Carry Transit's Arlington facility via Union Pacific railcars – name Carry Transit as the consignee on bills of lading provided by the shippers to Union Pacific. It is undisputed that Carry Transit did not consent to being listed as the consignee on the bills of lading and that it received shipments from Union Pacific rail cars in its capacity as agent for the shippers. The fundamental issue in this case is whether the shippers' unilateral designation of Carry Transit as consignee in the bills of lading renders Carry Transit liable

1

for demurrage charges that accrued on shipments delivered to and accepted by Carry Transit at its Arlington facility.

The parties filed cross motions for summary judgment on that issue, and on October 27, 2005 the Court granted Carry Transit's motion and entered judgment in its favor. The Court's decision was founded on the principle enunciated in the case law that a shipper's unilateral decision to name its agent, a non-party to a transportation contract between the shipper and carrier, as a consignee without its consent does not render the agent liable for demurrage charges. Union Pacific contends that the Court's Memorandum Order contains "manifest errors of law", and it moves the Court to vacate that order and the judgment and to enter summary judgment in its favor.

## II. Analysis

The federal rules do not formally provide for a "motion for reconsideration", denominated as such. *Martinez v. Bohls Equip. Co.*, 2005 WL 1712214, at *1 (W.D. Tex. July 18, 2005). Nevertheless, such a motion may be treated as a motion "to alter or amend" a judgment under Rule 59(e) if it is filed within 10 days of the judgment or as a motion for "relief from judgment" under rule 60(b) if filed if served after more than 10 days after a judgment is entered. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) (abrogated on other grounds). Because Union Pacific filed its motion for reconsideration within 10 days (not counting weekends) of the judgment entered on October 27, 2005, the Court will evaluate it as a Rule 59(e) motion.

A motion under Rule 59(e) "calls into question the correctness of a judgment." In re *Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). It "must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Res.*

2

*Group. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (internal quotations and citations omitted). In evaluating a Rule 59(e) motion, the district court is afforded wide discretion, which is guided by the need to strike a balance between concerns of finality and the rendition of just decisions based on all the facts. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). A Rule 59(e) motion, however, should not simply recycle arguments that were previously rejected by the court. In re *Self*, 172 F.Supp.2d 813, 815-16 (W.D. La. 2001).

Although the Court finds that Union Pacific's motion for reconsideration mainly retreads the arguments raised in its motion for summary judgment and in its responsive briefing to Carry Transit's motion for summary judgment, a brief analysis of the substance of those arguments is warranted. It is worth noting at the outset that Union Pacific concedes that Carry Transit received the shipments at issue in its capacity as an agent for its customers (i.e. the shippers), that Carry Transit did not take title to the freight, that Carry Transit did not resell the freight, that Carry Transit's holding tanks were used only as storage facilities for the shippers, and that the shippers later themselves sold the freight to third parties. (Mot. Reconsideration at 6).

Union Pacific contends that, to avoid liability for demurrage charges, Carry Transit had an obligation to notify Union Pacific that it was receiving the freight only in its capacity as an agent for the shippers. Union Pacific cites to two Texas cases: *Glendon Inv., Inc. v. Brooks*, 748 S.W.2d 465 (Tex. App. – Houston [1st Dist.] 1988, writ denied) and *Southwestern Bell Media, Inc. v. Trepper*, 784 S.W.2d 68 (Tex. App. – Dallas 1989, no writ). These cases address the general principle under Texas law and the law of agency that "an agent who fails to disclose the fact of his agency to a third party with whom he contracts may be held personally liable on the contract." *Glendon*, 748 S.W.2d at 467; *Trepper*, 784 S.W.2d at 71. These cases are inapplicable to the facts of this case, however,

3

because it is undisputed here that Carry Transit never entered into a contract with Union Pacific. While both Union Pacific and Carry Transit each had independent contracts with the shippers, at no point did they contract with each other.

The plaintiff in *City of New Orleans v. Rapid Truck Leasing, Inc.*, 348 So.2d 1299 (La. App. 1977), discussed in the Memorandum Order, made a similar argument to the one advanced by Union Pacific here. In *Rapid Truck Leasing*, a shipper contracted with a carrier to ship tractors to the shipper's outlet in Utah. *Id.* at 1300. The shipper separately contracted with the defendant to load the tractor onto the carrier's boxcar. *Id.* The carrier prepared a freight waybill and delivered it to the plaintiff, with whom the carrier had contracted to place the car in the designated location and deliver it after loading to the carrier. *Id.* The waybill, however, erroneously listed the defendant as the shipper. *Id.* The plaintiff argued that it was entitled to collect demurrage from the defendant because the waybill, upon which it relied, reflected that the defendant was the shipper. *Id.* The plaintiff claimed that it should not be held responsible for errors in the bill of lading or waybill and that it is either the shipper's or the carrier's responsibility to ensure that such documents were correct. *Id.* The plaintiff advanced the idea, among others, that it was entitled to recover from the defendant on the basis that the defendant was an agent acting for an undisclosed principal. *Id.* The court rejected plaintiff's theory because the "principle contained in [the cases upon which plaintiff relied] applies to instances where there is a contract made between the agent and the other party." *Id.*; *see also Illinois Cent. R.R. Co. v. S. Tec Dev. Warehouse, Inc.*, 337 F.3d 813, 820 n.5 (7th Cir. 2003) (noting that "the general rule of agency law that an agent that refuses to disclose the identity of its principle is personally liable for charges incurred on behalf of the principal . . . only applies where an agent is actually entering into a contract on behalf of the principal."). Because the record did not

4

show a contract between the plaintiff and the defendant, the court entered judgment in favor of the defendant. *Id.* at 1300-01. The defendant here, Carry Transit, similarly never entered into a contract with Union Pacific, either on its own behalf or that of its customers. Union Pacific's reliance on *Glendon* and *Trepper* is therefore misplaced.

Union Pacific next claims that the *Matson* and *South Tec* decisions, upon which the Court relied in part in its Memorandum Order, are inapplicable to this case because of basic factual differences. The plaintiffs in *Matson* and *South Tec* sought to hold the defendants liable for demurrage charges because they were listed as consignees on some bills of lading, while the majority of bills of lading properly listed the defendants as a "care of" or "stop" party, naming some other party as the consignee. *S. Pac. Transp. Co. v. Matson Navigation Co.*, 383 F.Supp. 154, 155 (N.D. Cal. 1974); *S. Tec*, 337 F.3d at 821. According to Union Pacific, the [*Matson* and *South Tec*] courts held that due to the vast majority of identical shipments identifying the actual consignee, it was apparent to the rail carriers that another party named as consignee on a few of the bills of lading was really an agent for the consignee named on the 'vast majority' of the bills of lading." (Mot. Reconsideration at 10). In other words, Union Pacific argues that in both of those cases the carrier had actual notice that the defendants were not true consignees because the established course of dealing between the parties established that they were merely agents. Union Pacific points out that here, unlike in *Matson* and *South Tec*, *all* of the bills of lading at issue named Carry Transit as the consignee, leaving Union Pacific without any notice that Carry Transit was functioning only in an agency capacity.

The Court disagrees with Union Pacific's view that the court's holding in *Matson* turned on the fact that the defendant was not named as consignee on the majority of bills of lading. The *Matson* decision instead seemed to be based on the fact that there was no evidence in the record that

5

the defendant had authorized the shippers to consign goods to it. *Matson*, 383 F.Supp. at 157. The only difference, the court noted, between cases where the defendant was named as a consignee and those where it was not "was the shipper's unilateral decision whom to name as consignee." *Id*. The court refused to countenance a result that, under the facts of that case, would "place a connecting carrier's liability totally within the shipper's control[.]" *Id*. There is no indication in *Matson* that the court based its ruling on the supposition that the plaintiff-carrier must have known that the defendant was not a true consignee because it was not listed as such in most of the bills of lading. While the court did seem to indicate that a finding of consignee status is more likely in situations where a consignee is either the purchaser of the cargo or the person to whom final delivery is to be made, "and who thus had an interest in and control over the cargo", *id*., here it is undisputed that Carry Transit was not an owner of the products shipped to it in Union Pacific rail cars, nor was it in fact the person to whom final delivery was made, although Union Pacific may indeed have had no reason to know that at the time of delivery. Rather, Carry Transit merely served as a storage facility for its customers' products until its customers decided to sell those products to other parties.

Union Pacific also overstates the role of notice in the *South Tec* decision. There the Seventh Circuit stated that "being listed by third parties as a consignee on some bills of lading is not alone enough to make [the defendant warehouse] a legal consignee liable for demurrage charges although it, coupled with other factors, might be enough to render [the defendant] a consignee." *S. Tec*, 337 F.3d at 821. As this Court stated in the Memorandum Order, "[t]he [*South Tec*] court did not elucidate which 'other factors' might tip the balance in favor of finding consignee status, and it left the ultimate determination for the district court on remand." (Memorandum Order at 8). It is true that the *South Tec* Court noted that under the facts of that case, the carrier was aware that the

6

defendant-warehouse was merely an agent for the shipper; however, this Court is unable to conclude, as has Union Pacific, that the *South Tec* Court "placed significant weight" on that fact. Indeed, the appellate court declined to opine on the question of whether the defendant was a consignee, leaving that decision to the district court. The court merely noted in dicta that the plaintiff-carrier had actual notice that the defendant-warehouse was not a consignee and that this fact *may* be relevant "[t]o the extent that some form of notice may play a role in the determination of consignee status[.]" *Id.* at 821.

In short, the Court finds that Union Pacific has failed to meet its burden of showing that this Court committed a manifest error of law in its previous summary judgment ruling. While Union Pacific contends that "the Court may have been unaware of controlling authority" when it issued its Memorandum Order, Union Pacific has failed to direct the Court to any Fifth Circuit or United States Supreme Court decision directly addressing the issues presented by this case. The Court certainly recognizes that, in the absence of controlling, on-point precedent, the law in the demurrage field is sufficiently murky to support the position of either side. However, Union Pacific has simply not pointed the Court to any cases holding an agent of a shipper liable for demurrage charges where the shipper unilaterally named the agent as a consignee in a transportation contract between the shipper and the carrier.

This is not to say that there is no authority from which Union Pacific could draw to support that notion, however. For example, in *Pennsylvania R.R. Co. v. Titus*, 109 N.E. 857, 216 N.Y. 17 (N.Y. App. 1915), the plaintiff railroad delivered to the defendant, as the consignee, a shipment of peaches. *Id.* at 20. The peaches had been consigned to the defendant by Franklin, who had contractually arranged for the defendant to sell the peaches on Franklin's behalf and remit the

7

proceeds, minus commission and expenses, to Franklin. *Id.* The defendant refused to pay the plaintiff-carrier the full amount of freight charges allegedly due on the ground that he was a mere agent of Franklin. *Id.* The Court found that the defendant was liable for the charges, stating that

> As to the plaintiff, the defendant stood in the relation of owner of the peaches. The bills of lading designated him as the consignee and did not disclose his agency or the ownership of Franklin, nor did he notify the plaintiff before it delivered the peaches of either of such facts. At the time of the delivery the plaintiff did not have knowledge or notice, express or inferential, that the defendant was not the owner. Under those conditions, the plaintiff had the right, as a matter of law, to regard and deal with the consignee as the owner of the peaches, and the consignee in permitting the plaintiff to so deal with him agreed, through implication, that he would pay the plaintiff's lawful charges for transporting and delivering the peaches to him. The consignee was the presumptive owner and when he accepted the peaches and had not informed the plaintiff and the plaintiff did not have knowledge or notice before the delivery that he was a factor or agent and that his acceptance of them would be in that capacity, he by the acceptance obligated himself to pay the unpaid legal charges of transportation. The obligation arose from the presumptive ownership, the acceptance of the goods and the services rendered and benefits conferred by the plaintiff for charges made and to be paid.
>
> . . .
>
> [Under the bill of lading] the delivery of the goods was to be withheld until the freight charges were paid. The payment of the charges was made by the bill of lading, or by one of the terms of the shipment controlling the rights of the consignee, the condition of a delivery to the consignee. When [the defendant] accepted the delivery under such bill of lading provision, the law implied a promise on his part to pay the charges, such being the terms on which the peaches were to be delivered. In accepting and receiving the goods, he made himself a party to the contract between the consignor and the plaintiff, or entered into an original contract to pay, which took the place of the right of the plaintiff to retain the property until the charges were paid.

*Id.* at 21-22 (internal citations omitted). Although *Titus* did not deal specifically with demurrage charges in a rail carrier context, the reasoning of that opinion supports the notion that an agent or factor of a shipper that is identified as a consignee in a bill of lading may become liable for such charges upon acceptance of goods delivered by the carrier in the absence of notifying the carrier of

8

its agent-only status.

Perhaps the most plausible basis upon which to hold Carry Transit liable in this suit was urged by Union Pacific in its response to Carry Transit's motion for summary judgment, namely that 49 U.S.C. § 10743(a)(1)[1] required Carry Transit to give notice to Union Pacific that it accepted the freight at issue only its capacity as an agent for the shippers.[2] Section 10743(a)(1) provides that

> Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this subsection when the transportation is provided by a rail carrier under this part. When the shipper or consignor instructs the rail carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property —
>
> (A)    of the agency and absence of beneficial title; and
>
> (B)    of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.

49 U.S.C. § 10743(a)(1). In its Memorandum Order, the Court relied on the Seventh Circuit's holding in *South Tec* that this section "applies only to agents who are also consignees, and not to

---

[1] The Court notes that Union Pacific did not rely upon § 10743(a)(1) in its Motion for Reconsideration.

[2] The parties dispute when Carry Transit denied liability for demurrage charges to Union Pacific. Union Pacific contends that Carry Transit "never even communicated with Union Pacific to dispute, reject, or discuss the invoices received[.]" (Mot. Reconsideration at 10). Carry Transit, on the other hand, claims that its President wrote a letter, dated August 8, 2002, to Union Pacific denying Carry Transit's responsibility for demurrage and stating that such charges should appropriately be aimed at the shippers. (Carry Transit Mot. Summ. J. App. at 4, 10). As the Court noted in its Memorandum Order, there is no evidence that this letter was actually sent to Union Pacific.

agents who are *not* consignees." *S. Tec*, 337 F.3d at 817 (emphasis in original).[3] Because this Court found that Carry Transit was only an agent and did not consent to being, and in fact was not, a consignee, the Court determined that § 10743(a)(1) did not apply.

The Court certainly appreciates that § 10743(a)(1) could be read to apply to an agent that, for whatever reason, is listed as a consignee on a bill of lading, to whom shipments may properly be made.[4] At least one court has construed a similarly worded statute that way. *See Middle Atl. Conference v. United States*, 353 F.Supp. 1109 (D.D.C. 1972). The *Middle Atlantic* Court discussed 49 U.S.C. § 323[5], an apparent predecessor of current 49 U.S.C. § 13706, the counterpart to §

---

[3] The *South Tec* Court did not ultimately decide whether § 10743(a)(1) applied in that case because the district court did not determine the preliminary question of whether the defendant was a consignee. *S. Tec*, 337 F.3d at 817.

[4] Some courts define a "consignee" as a "person to whom a carrier is to deliver a shipment of goods; the person named in a bill of lading to whom or to whose order the bill promises delivery." *N.B. Garments (PVT.), Ltd. v. Kids Int'l Corp.*, 2004 WL 444555, at *1 n.2 (S.D. N.Y. March 10, 2004) (quoting BALLENTINE'S LAW DICTIONARY (3d ed. 1969); *see also* BLACK'S LAW DICTIONARY 307 (6th ed. 1990) ("In a commercial use, 'consignee' means one to whom a consignment may be made, a person to whom goods are shipped for sale, or one to whom a carrier may lawfully make delivery in accordance with his contract of carriage, or one to whom goods are consigned, shipped, or otherwise transmitted.") (citing *Power Transmission Equip. Corp. v. Beloit Corp.*, 55 Wis. 2d 540 (Wis. 1972), 201 N.W.2d 13, 15, 16); U.C.C. § 7-102(b) (defining "consignee" to mean "a person to which or to whose order the bill promises delivery."). If a consignee is defined as such, then arguably Carry Transit fits within that definition, as it does not appear to be disputed that the bills of lading at issue made clear that Carry Transit was a party to whom delivery could lawfully be made.

[5] The provision states in relevant part:
> Where any common carrier by motor vehicle is instructed by a shipper or consignor to deliver property transported by such carrier to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and had no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and, in the case of shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has

10743(a)(1) that applies to motor carriers. The court stated that § 323 is

> . . . addressed essentially at the problem of the warehouseman, carrier, etc., who, while acting as agent for an undisclosed principal, appears as consignee on the bill of lading. As such, he may become liable on acceptance of the goods (subject to the arrangement of the parties and other circumstances outside the scope of this section) for transportation charges for the transportation of property (line-haul charges) to the extent they are billed to him at the time of delivery for which he is otherwise liable, but with respect to 'transportation charges . . . found to be due after the property has been delivered to him' (which may include detention charges), the statute provides that a consignee might escape that obligation if certain conditions of notice are satisfied. The fact that the agent for an undisclosed principal appears on the bill of lading as consignee may be due either to the drafting of the original bill or to the reconsignment or diversion of the shipment to a point other than that specified in the original bill of lading. In the former case, he may escape liability and the shipper or consignor will become liable (1) if he is in fact an agent; and (2) if 'prior to delivery of the property' he has 'notified the delivering carrier in writing of the fact of such agency and the absence of beneficial title.' In the situation where there has been a reconsignment or diversion of the shipment, he may escape liability and the 'beneficial owner' of the property will become liable if the agent satisfies the above two conditions and additionally (3) if he has also 'notified the delivery carrier in writing of the name and address of the beneficial owner of the property.'
>
> . . .
>
> In no case does section 223 operate to place liability on an agent for a disclosed principal where goods are billed to a consignee in care of a warehouseman, carrier or other agent. It only provides certain methods of avoiding liability where an agent of an undisclosed principal appears on the bill of lading as a consignee without indication of his agency status and who thereby might become liable for detention charges in addition to line-haul charges.

*Id.* at 1121 n.34.[6]

Here too, Carry Transit appeared as the consignee on bills of lading provided to Union Pacific with no indication of its agency relation. Thus, § 10743(a)(1) could plausibly be read to apply in this

---

      also notified the delivering carrier in writing of the name and address of the beneficial owner of the property.
49 U.S.C. § 323.

[6] Although Union Pacific cited to the *Middle Atlantic* decision in its earlier briefing, at no point has it referred to the Court to the above-quoted passage.

case. Whether it should essentially boils down to whether a party is a consignee within the meaning of that section simply because it is unilaterally named by the shippers as such in a bill of lading. The Seventh Circuit has found that § 10743(a)(1) comes into play only where it is first determined that an agent is also a consignee, and not when it is determined that an agent is only an agent and not a consignee. *S. Tec*, 337 F.3d at 817. Here, the Court has determined that Carry Transit was acting only in its capacity as an agent for the shippers and not as a consignee, and that § 17403(a)(1) does not therefore apply. Although it is reasonable to find otherwise, the Court concludes that Union Pacific has failed to show that the Court committed a manifest error of law in finding as it did.

### IV. Conclusion

For the reasons stated above, the Court DENIES Union Pacific's Motion for Reconsideration. Given the uncertainty in this area of the law, the Court also DENIES Carry Transit's request for its costs and attorney's fees incurred in responding to Union Pacific's Motion for Reconsideration.

**SO ORDERED.**

SIGNED December 30th, 2005

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE